**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **TODD BROWN,** | |
| *Plaintiff*, | |
| -against- | **22-cv-02949 (ALC)** |
| | **OPINION** |
| **NEW YORK CITY TRANSIT AUTHORITY,** et al, | |
| *Defendants*. | |

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Todd Brown brings this lawsuit against his former employer the New York City

Transit Authority ("NYCTA"), NYCTA President Sarah E. Feinberg, NYCTA Assistant Chief

Officer for Track System Maintenance Joseph Nasella, former Inspector General of the Office of

the MTA Inspector General ("MTA OIG") Carolyn Pokorny, and the Metropolitan

Transportation Authority ("MTA").[1] Plaintiff alleges he experienced adverse employment

actions and disparate treatment, and brings claims under Title VII, 42 U.S.C. § 1981, 42 U.S.C. §

1983, the New York State Human Rights Law ("NYSHRL"), and the New York City Human

Rights Law ("NYCHRL"). ECF No. 22, First Amended Complaint ("FAC"). Plaintiff asserts

NYSHRL and NYCHRL discrimination and retaliation claims against all Defendants; Title VII

discrimination and retaliation claims against the NYCTA; and § 1981 and § 1983 discrimination

and retaliation claims against the Individual Defendants. Plaintiff is an African American male

formerly employed by the NYCTA as a Track Worker, and subsequently as a full-rate Track

Inspector. *Id.*

---

[1] Plaintiff has not sued the MTA OIG entity.

Plaintiff's claims stem from an MTA OIG investigation of wrongdoing by NYCTA Track Inspectors from January 2020 to May 2021, during which the MTA OIG produced two OIG reports. Plaintiff alleges Mr. Nasella "personally 'spoon fed' Brown and six other, mostly non-white Track Inspectors to OIG for investigation." *Id.* at ¶¶ 34, 74. Plaintiff alleges discrimination because "Black Track Inspectors were targeted by Defendants for investigation and termination while white Track Inspectors responsible for crumbling tracks were let off the hook[,]" *id.* at ¶ 1, and the MTA OIG investigated "mostly non-white Track Inspectors" rather than white Track Inspectors, *id.* at ¶¶ 6-7, 60. In December 2020 and prior to the MTA OIG's issuance of its first OIG report, President Feinberg reassigned Plaintiff and the six other Track Inspectors to a lower title of Track Worker. *Id.* at ¶¶ 27, 80, 82. The MTA OIG then issued non-binding findings and recommendations to the NYCTA in December 2020 and found that Plaintiff and the six Track Inspectors had committed wrongdoing. *Id.* at ¶¶ 82-83. The NYCTA suspended the seven Track Inspectors without pay. *Id.* at ¶ 86. Plaintiff was subject to disciplinary arbitration hearings. *Id.* at ¶ 88. While the arbitration was ongoing, Plaintiff "submitted a complaint of race discrimination, retaliation and hostile work environment [against the NYCTA] to MTA EEO[,]" *id.* at ¶ 91, and the MTA EEO declined to investigate the complaint, *id.* at ¶ 92. The arbitrator in Plaintiff's disciplinary hearings then issued an Opinion & Award finding Plaintiff committed wrongdoing and sentenced Plaintiff to a suspension of "6-months time served without pay." *Id.* at ¶ 96; Arbitration Award at 18-19. The NYCTA did not restore Plaintiff to payroll for more than a month past the date he and the NYCTA had allegedly agreed upon. *Id.* at ¶ 93.

Plaintiff contends he was retaliated against due to two protected activities: the filing of his MTA EEO complaint, *id.* at ¶ 91, and three private Facebook posts he made criticizing the NYCTA's treatment of employees of color, *id.* at ¶ 48. Plaintiff claims that as a result of

discrimination and retaliation, the NYCTA denied him overtime work and time off requests. *Id.*
at ¶¶ 102-103.

Defendants moved to dismiss the Complaint. ECF Nos. 41, 43. Defendants' motion to
dismiss is hereby **DENIED** with respect to Plaintiff's retaliation claim related to the failure to
restore him to payroll tethered to his EEO complaint. The motion to dismiss is **GRANTED** in all
other respects. Plaintiff is **GRANTED** leave to amend his Complaint.

## BACKGROUND

### I.      Statement of Facts

Plaintiff is a black man. FAC at ¶¶ 8, 20. Plaintiff was employed by the NYCTA as a
Track Worker since November 25, 2013, and then, since November 4, 2018 as a full-rate Track
Inspector. *Id.* at ¶¶ 43-45. Plaintiff and his co-workers were assigned to elevated train tracks in
the Bronx, Queens. *Id.* at ¶ 7. In 2019, the news media reported on falling debris from elevated
train tracks was widespread throughout New York City. *Id.* at ¶¶ 52-57.[2] Brown maintains that
the No. 7 elevated train tracks in Queens that were reported on by the media "were mostly
inspected and maintained by white Track Inspectors and their supervisors." *Id.* at ¶ 58.

The MTA OIG independently monitors and oversees MTA activities, programs, and
employees. *Id.* at ¶ 25-26; N.Y. Pub. Auth. Law § 1279. The MTA OIG does not have the
authority to charge, discipline, or remove employees of the MTA, the NYCTA, or any other
agency. These independent agencies are not required follow any of the MTA OIG's

---

[2] The falling debris from elevated train tracks included the No. 7 elevated train tracks in Queens, B and Q lines in
Brooklyn, the J, M, Z lines in Brooklyn, A line in Ozone Park, Queens, N and W lines in Astoria, J and W lines in
Jamaica, and train lines covering northern Manhattan and the Bronx to which Plaintiff's unit was assigned. FAC at
¶¶ 52-57; Declaration of Jeanine Conley Daves, dated May 26, 2023 ("Daves Decl."), Exhibits A - F4, ECF Nos.
45-1 - 45-5.

recommendations. FAC at ¶ 25-26; N.Y. Pub. Auth. Law § 1279(6). Ms. Pokorny was the then-Inspector General of the MTA OIG. *Id.* ¶ 31. She is a non-black woman. *Id.* ¶ 32.

In January 2020, the MTA OIG began an investigation into the reports of falling debris from elevated train tracks and selected Plaintiff and his co-workers on the elevated Nos. 2, 4 and 6 lines in the Bronx as the "test group" for its investigation. *Id.* at ¶¶ 59-60. The "test group" included Plaintiff, "four other Black male Track Inspectors, one Hispanic male, and one white, LGBTQ female (who shared a track section with a Black worker)." *Id.* at ¶ 82. He alleges MTA OIG focused on the test group, rather than investigate "the white Track Inspectors on the No. 7 tracks." *Id.* at ¶ 60.

Brown alleges that "[f]rom March 18 – 19, 2020, at the direction of Pokorny," MTA OIG investigators "watched the section of the No. 4 elevated tracks that Brown was assigned to inspect in the Bronx." *Id.* at ¶ 61. MTA OIG reported that Plaintiff had failed to conduct track inspections he claimed to have done, and upon review of his personal cell phone, reported that Plaintiff used his phone excessively on workdays. *Id.* at ¶¶ 83, 64, 65. On September 22, 2020, the MTA OIG interviewed Mr. Brown about his cell phone activity and investigators' reports that they had not observed Plaintiff on several days that he claimed to have inspected tracks. *Id.* at ¶¶ 67-68. Plaintiff admitted to using his personal phone for work calls instead of his MTA-issued phone. *Id.* at ¶ 68. Plaintiff reasserted that he had inspected the tracks on March 18 and 19, 2020. *Id.* at ¶ 68. The MTA OIG found that no track inspector had inspected the No. 4 track on March 18, 2020, including Plaintiff who claimed he had done so. *Id.* at ¶ 65.

NYCTA Superintendent Ron DeMaria, a white man, allegedly informed Brown that the MTA OIG allegedly had a "hard on for certain people" and would keep "digging and digging looking for anything." *Id.* at ¶ 70. Mr. DeMaria also informed Plaintiff that the MTA OIG called

him for information about Plaintiff. *Id.* at ¶ 71. Brown also alleges that, on an unspecified date,

he learned from an unidentified person in his union that NYCTA Assistant Chief Officer for

Track System Maintenance Nasella "personally 'spoon fed' Brown and six other, mostly non-

white Track Inspectors to OIG for investigation." *Id.* at ¶¶ 34, 74. Plaintiff alleges that "it is

widely known" that Mr. Nasella has "engaged in discriminatory behavior and has been the

subject of complaints filed with MTA's Department of Equal Employment Opportunity &

Diversity." *Id.* at ¶¶ 75-76.

On December 13, 2020, then-interim NYCTA President Feinberg removed Plaintiff and

the rest of the "test group" from their work assignments, reassigned them to a lower title of Track

Worker, and prohibited them from working without a supervisor. *Id.* at ¶¶ 27, 80, 82.

On December 28, 2020, the MTA OIG issued non-binding findings and

recommendations to the NYCTA. *Id.* at ¶ 83; Daves Decl., Exhibit H, ECF No. 45-8, OIG

Report #2020-29 *7 Track Inspectors' Failure to Inspect Tracks, False Claims of Inspections, and

Dereliction of Duties*, issued December 28, 2020 ("OIG Report"). The MTA OIG found that

Plaintiff and six "test group" members had engaged in multiple instances of wrongdoing. *Id.* at

¶¶ 82-83.

On December 29, 2020, the NYCTA served Plaintiff and the "test group" with pre-

disciplinary suspension notices, and suspended them without pay. *Id*. at ¶ 86. Plaintiff's

disciplinary arbitration hearing began on March 11, 2021, during which "it was agreed" by

unidentified individuals at the NYCTA that Plaintiff would be restored to service on April 9,

2021. *Id.* at ¶ 88. However, Plaintiff was not restored to payroll until May 18, 2021. *Id.* at ¶ 93.

On March 17, 2021, Brown alleges that Ms. Pokorny was asked at a MTA Board Meeting

about the "MTA OIG targeting Black and Hispanic Track Inspectors provided by Nasella and not

investigating white Track Inspectors." *Id*. at ¶ 89. Ms. Pokorny stated that she "could not respond because the OIG final report had not been released and the arbitration hearings were still on-going." *Id*. at ¶ 90.

On April 2, 2021, Plaintiff "submitted a complaint of race discrimination, retaliation and hostile work environment [against the NYCTA] to MTA EEO." *Id.* at ¶ 91. The grounds for Plaintiff's complaint were that the NYCTA "targeted non-white Track Inspectors" by not inspecting white Track Inspectors assigned to train lines where falling debris was reported, *id.*, and that he was retaliated against as a result of three private social media posts he made criticizing NYCTA's treatment of non-white employees, *id.* at ¶ 48. On April 8, 2021, the MTA EEO informed Plaintiff that it declined to investigate his complaint. *Id.* at ¶ 92.

On May 17, 2021, the arbitrator issued an Opinion & Award, finding Plaintiff guilty of two of the four charges: "making false and/or misleading entries on inspection reports," and failing to "fully cooperate with MTA OIG's investigation by giving 'evasive' answers." *Id.* at ¶¶ 95-96; Daves Decl., Exhibit G, ECF No. 45-7 ("Arbitration Award") at 15-17. The arbitrator concluded that Plaintiff's "actions constitute gross misconduct, filing false reports, and conduct unbecoming a Track Inspector," and sentenced Plaintiff to "6-months time served without pay." Arbitration Award at 18-19; FAC at ¶ 96. As a result of the sentence, Plaintiff allegedly lost "nearly $50,000 in salary." FAC at ¶ 99. Plaintiff does not allege that he appealed the arbitrator's decision or that it was incorrect.

In May 2021, the MTA OIG released its final report, which addressed "insufficient supervision of Track Inspectors" at the NYCTA and "made several recommendations to NYCTA to adopt agency-wide policies to improve the supervision of Track Inspectors and track safety." *Id*. at ¶ 100; Daves Decl., Exhibit I, ECF No. 45-9. OIG Report #2021-03 *Insufficient*

*Supervision of Track Inspectors at NYC Transit – Final Report*, issued May 2021 ("OIG Report 2").

Plaintiff also claims that he was retaliated against as a result of three private social media posts he made criticizing the NYCTA's treatment of employees of color on October 22, 2019, December 6, 2019, and December 15, 2020. FAC at ¶ 48.[3] On October 22, 2019, he posted in a private Facebook group of NYCTA employees that "'the normal way of doing business in the NYCT which is to me systematically oppressive. And because we are mostly of color[.]'" *Id.* at ¶ 49. On December 6, 2019, he posted in "another Facebook group" that "'It's true the MTA Board are Racist Systematic Oppressors. They are outdated Good Il [sic] Boys club. We must publicly fight them,'" and that "'for the MTA Board to talk low of us is oppressive.'" *Id.* at ¶ 50. Finally, on December 15, 2020, after receiving disciplinary charges, Plaintiff "respon[ded] to a[n] [unspecified] member discussing how he was not afraid to be fired," and that "'[t]hey use I.G.'s to dig up and Trump charges on you. Going thru it now. There is systematic racism in the M.T.A." *Id.* at ¶ 51.

According to Brown, (1) "[a]fter May 11, 2020", the NYCTA denied his requests for overtime work "due to a surplus of Track Inspectors making overtime work unnecessary," *id.* at ¶ 102; (2) requested time off in July 2020, the NYCTA denied his request for time off due to a shortage of track inspectors, *id.* at ¶ 103; and (3) some time in November 2020, NYCTA Maintenance Supervisor I Jason Auer said in his presence that NYCTA "higher-ups made 'complaints' to General Superintendent Brian Bellew about employees' social media posts about working at NYCTA," *id.* at ¶ 72. Mr. Brown alleges that "[i]n or around January 2021, a union

---

[33] It is unclear which Facebook groups Plaintiff allegedly posted his December 6, 2019 and December 15, 2020 posts in. Plaintiff vaguely describes that on December 6, 2019 he posted in "another Facebook group" but does not specify if his audience was also fellow NYCTA workers. Plaintiff does not specify which group he made his December 15, 2020 post in.

representative advised [him] to stay off social media to prevent NYCTA from targeting [Brown]." *Id.* at ¶ 87. Plaintiff claims that "NYCTA delayed returning him to payroll [on April 9, 2021] until May 18, 2021 in retaliation for [his] complaints." *Id.* at ¶ 93.

Plaintiff alleges that "[a]t all relevant times, Defendants aided and abetted the discriminatory acts of each other taken against Plaintiff." *Id.* at ¶ 40.

## II.     Procedural History

Plaintiff initiated this action on April 8, 2022, naming the NYCTA, Ms. Feinberg, and Mr. Nasella as Defendants. ECF No. 1. On February 27, 2023, Plaintiff amended his Complaint, adding former Inspector General Pokorny and the MTA as Defendants. FAC. Plaintiff asserts NYSHRL and NYCHRL discrimination and retaliation claims against all Defendants; Title VII discrimination and retaliation claims against the NYCTA; and § 1981 and § 1983 discrimination and retaliation claims against the Individual Defendants.

Defendants moved to dismiss the Complaint on May 26, 2023. ECF Nos. 41, 43. Plaintiff filed his oppositions on June 29, 2023. ECF No. 48-49. Defendants filed their replies on July 13, 2023, ECF No. 52, and July 17, 2023, ECF No. 53. This matter is fully briefed.

## STANDARD OF REVIEW

## I.     Federal Rules of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### I. The Court May Consider the Arbitration Opinion and Award and Media Reports.

Defendants have submitted the arbitration opinion and award in Plaintiff's disciplinary hearings,[4] two OIG reports,[5] and multiple media reports of fallen debris on New York City train tracks[6] in support of their motion to dismiss.

Defendants argue the Court should take judicial notice of all under Fed. R. Evid. 201. "Under Federal Rule of Evidence 201(b), [t]he court may judicially notice a fact that is not

---

[4] Arbitration Award.
[5] OIG Report; OIG Report 2.
[6] ECF Nos. 45-1 to 45-5.

subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Christa McAuliffe Intermediate Sch. PTO, Inc. v. De Blasio*, 364 F. Supp. 3d 253, 261-62 (S.D.N.Y. 2019) (quotations omitted). "It is well settled that this Court may consider [publicly available] documents in the course of deciding a motion to dismiss without converting that motion into a motion for summary judgment. Moreover, the Court would be remiss if it failed to take judicial notice of those documents, as provided by Fed. R. Evid. 201." *In re Nat. Gas Commodity Litig.*, 337 F. Supp. 2d 498, 510 (S.D.N.Y. 2004) (internal citations omitted). This includes documents available on official government websites. *Fernandez v. Zoni Language Ctrs., Inc.*, No. 15 Civ. 6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016). "Courts routinely take judicial notice of documents filed in other courts[.]" *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 72 (E.D.N.Y. 2016) (citation and quotation marks omitted). *See also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (the court in deciding a motion to dismiss "may also look to public records . . . filed in state court").

Pursuant to Fed. R. Evid. 201(b), "courts have regularly taken judicial notice of arbitration awards . . . in considering a motion to dismiss[.]" *Tavenner v. Int'l Bus. Machs. Corp.*, No. 21-CV-6345 (KMK), 2022 WL 4449215, at *3 (S.D.N.Y. Sept. 23, 2022), aff'd, No. 22-2318, 2023 WL 4984758 (2d Cir. Aug. 4, 2023) (quoting *Cox v. Perfect Bldg. Maint. Corp.*, No. 16-CV-7474, 2017 WL 3049547, at *3 (S.D.N.Y. July 18, 2017). "Because Plaintiff does not dispute the authenticity of the Arbitration Award . . . the Court is permitted to take judicial notice of the award at this early juncture." *Id.* However, "[w]hile the Court is permitted to take judicial notice of the existence of the Arbitration Decision on a motion to dismiss, it cannot do so

to establish the truth of the facts asserted therein." *Beaton v. Metro. Transp. Auth. N.Y.C. Transit*, No. 15 CIV. 8056 (ER), 2016 WL 3387301, at *4 (S.D.N.Y. June 15, 2016) (citing *Henneberger v. Cty. of Nassau*, 465 F. Supp. 2d 176, 185 (E.D.N.Y. 2006).

In deciding motions to dismiss, courts "may take judicial notice of documents in the public record, which includes records and reports of administrative bodies" *Vale v. Great Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 433 (E.D.N.Y. 2015). This includes an employee's disciplinary hearings. *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. Nov. 21, 2002).

A complaint includes any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal citations omitted). A court may consider documents not incorporated by reference "where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint." *Id.*

Here, "Plaintiff does not dispute the authenticity of the Arbitration Award[.]" *Tavenner*, 2022 WL 4449215, at *3. Its existence is not subject to reasonable dispute. The Court may properly take judicial notice of the Arbitration Opinion and Award. As in *Beaton*, Plaintiff did not litigate his discrimination or retaliation claims in arbitration. The Court declines to assume the truth of the neutral arbitrator's fact-findings or preclude Mr. Brown from alleging contradictory facts or claims. The Opinion and Award is also incorporated by reference and is integral to Plaintiff's FAC.

The Court may also take judicial notice of the two OIG Reports which are issued by a government agency and are available from the website of the New York State MTA OIG.[7] The

---

[7] The OIG Report may be accessed at: https://mtaig.ny.gov/Reports/20-29.pdf; the OIG Report 2 may be accessed at:

OIG Reports are the result of its investigation pursuant to N.Y. Pub. Auth. Law § 1279. The OIG

Reports are also incorporated by reference in the FAC because Plaintiff asserts the MTA OIG

investigation was premised on improper discriminatory motives.

The Court can properly consider the media reports as they are publicly available

documents. Plaintiff asserts in his Complaint that in 2019, the news media reported on falling

debris from elevated train tracks throughout New York City. FAC at ¶¶ 52-57.

## II.   Plaintiff's Claims Against Inspector General Pokorny Cannot Stand.

Plaintiff asserts NYSHRL and NYCHRL discrimination and retaliation claims and §

1981 and § 1983 discrimination and retaliation claims against the then-MTA OIG Inspector

General Pokorny.

Defendants argue that "the MTA OIG is a separate and distinct entity from the MTA and

the NYCTA." ECF No. 42 at 9. However, courts within this district have found the MTA

Inspector General to be an MTA employee, "as the Public Authorities Law creates the Inspector

General's office '*in* the metropolitan transportation authority,' N.Y. Pub. Auth. Law § 1279(1)

(emphasis added), and the law's legislative history similarly notes that the office is created

*within*' the MTA[.]" *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 271 (S.D.N.Y.

2006). *See also see also Best–Simpson v. N.Y.C. Transit Auth.*, 221 A.D.2d 398, 398, 633

N.Y.S.2d 535, 536 (2d Dep't 1995) (same). Therefore, the MTA OIG is a subsidiary of the

MTA, and Ms. Pokorny is an MTA employee. However, "[t]he Metropolitan Transportation

Authority and its subsidiaries must be sued separately, and are not responsible for each other's

torts." *Mayayev v. Metro. Transp. Auth. Bus*, 74 A.D.3d 910, 911, 904 N.Y.S.2d 84, 86 (2010)

(citations omitted); *see also Rodriguez v. Metro. Transp Auth.*, No. 153734/2018, 2021 WL

---

https://mtaig ny.gov/Reports/2021-03%20-
%20Insufficient%20Supervision%20of%20Track%20Inspectors%20at%20NYC%20Transit.pdf.

1534719, at *1 (N.Y. Sup. Ct. Apr. 19, 2021) (same). In *Anemone*, the Inspector General was not held liable for disciplinary action imposed by the MTA on an MTA employee, as the MTA OIG was limited by statute "to investigating abuse and recommending remedial action and does not contemplate any role for him in adjudicating an employee's employment status with the MTA." 410 F. Supp. 2d at 270.

The parties do not contest that the NYCTA and the MTA are separate and distinct entities. *Romero v. Metro. Transp. Auth.*, 444 F. Supp. 3d 583, 586 n.3 (S.D.N.Y. 2020) ("NYCTA is an affiliate, not a subsidiary of the MTA"); *see also Reiter v. Metro. Transp. Auth.,* No. 01 Civ. 2762, 2002 WL 31190167, at *5 (S.D.N.Y. Sept. 30, 2002). Because the NYCTA and the MTA are separate and distinct entities, they too cannot be held liable for each other's torts.

"[T]he existence of an 'employer-employee relationship'" is "[a]n essential element of a claim under the NYSHRL or the NYCHRL[.]" *McHenry v. Fox News Network*, 510 F. Supp. 3d 51, 80 (S.D.N.Y. 2020) (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014)). Prior to *Iqbal*, a plaintiff on a § 1983 claim could establish a supervisor's personal involvement if: "the defendant participated directly in the alleged constitutional violation" or (2) "the defendant created a policy or custom under which unconstitutional practices occurred[,] among other factors. *Littlejohn*, 795 F.3d at 314 (citing *Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). Since *Iqbal*, the Second Circuit has established that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 at 676). *See also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (supervisory liability in

a § 1983 action requires "a showing of some personal responsibility, and cannot rest on respondeat superior.") (internal quotation marks omitted). "The NYSHRL and NYCHRL also require personal involvement in order to hold an individual defendant personally liable for an act of discrimination." *Oliver v. City of N.Y.*, No. 19-CV-11219 (PGG) (JLC), 2022 WL 455851, at *28 (S.D.N.Y. Feb. 15, 2022) (*adopting recommendation & report in part, rejecting in part,* No. 19-CV-11219 (PGG) (JLC), 2023 WL 2160062 (S.D.N.Y. Feb. 22, 2023)) (internal quotation marks omitted). "The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation . . . [and] must personally display the requisite state of mind, depending on the violation at issue." *Sullivan v. City of Glens Falls*, 2022 WL 2390242, at *10 (N.D.N.Y. July 1, 2022) (citing *Tangreti*, 983 F.3d at 618), *report & recommendation adopted*, 2022 WL 4364026 (N.D.N.Y. Sept. 21, 2022). In the alternative, a supervisor may be "personally involved" "as an aider and abettor[.]" *Foster v. Consol. Edison Co. of N.Y., Inc.*, No. 21 Civ. 3570 (DLC), 2021 WL 4461163, at *1 (S.D.N.Y. Sept. 29, 2021). An aider and abettor is not required to have an employer-employee or supervisory relationship. *McHenry*, 510 F. Supp. 3d at 68.

Plaintiff must then establish Ms. Pokorny was "personally involved" in the alleged misconduct. *Littlejohn*, 795 F.3d at 314. As an initial matter, Plaintiff does not allege that Ms. Pokorny or the MTA OIG was his employer. Plaintiff attempts to claim Ms. Pokorny is liable because she "participated directly in the alleged constitutional violation" by "not investigat[ing] the white Track Inspectors on the No. 7 tracks," but "[i]nstead, [] prob[ing] a 'test group' of seven mostly non-white Track Inspectors, including Brown[,]" FAC at ¶ 60, and "direct[ing]" the investigation of Mr. Brown and his six co-workers, *id.* at ¶¶ 67-68. Mr. Brown also cites to the MTA OIG's recommendations and reports as proof of Ms. Pokorny's personal involvement. But

independent agencies are not required follow any of the MTA OIG's recommendations as they are non-binding. N.Y. Pub. Auth. Law § 1279(6). *See Anenome*, 410 F. Supp. 2d at 270. Plaintiff's alleged adverse employment actions, such as being subject to an investigation and being suspended without pay, were imposed by his employer, the NYCTA, and its employees, and not Ms. Pokorny or the MTA OIG. Therefore, Ms. Pokorny cannot be personally liable for any disciplinary action that the NYCTA chose to take.

In his FAC, Plaintiff next alleges that "[a]t all relevant times, Defendants aided and abetted the discriminatory acts of each other taken against Plaintiff." FAC at ¶ 40. Plaintiff seeks to paint Ms. Pokorny as an "aider or abettor" of Defendants' NYSHRL or NYCHRL discrimination and retaliation against him, but Plaintiff has not pleaded sufficient facts of how Ms. Pokorny allegedly aided or abetted other Defendants in discriminating and retaliating against Plaintiff. An underlying NYSHRL or NYCHRL violation is required to aid or abet. *Boonmalert v. City of N.Y.*, 721 Fed. App'x 29, 34 (2d Cir. 2018). For reasons discussed below, Plaintiff has not established any NYSHRL or NYCHRL violations with respect to any Defendant.

In an attempt to show Ms. Pokorny was retaliatory or discriminatory, Plaintiff also cites to Ms. Pokorny "dodging" a question during an MTA Board meeting on March 17, 2021 "about the MTA OIG targeting Black and Hispanic Track Inspectors provided by NASELLA and not investigating white Track Inspectors." *Id.* at ¶¶ 89-90. However, Ms. Pokorny merely "claimed she could not respond because the OIG final report had not been released and the arbitration hearings were still on-going." *Id.* at ¶ 90. Ms. Pokorny's factual response does not constitute misconduct, nor creates an inference of racial discrimination or retaliation.

On his retaliation claim, Plaintiff fails to allege that Ms. Pokorny or the MTA OIG were even aware of Plaintiff's protected activity of posting on his private social media criticizing the

NYCTA. Ms. Pokorny's lack of knowledge about the protected activity demonstrates she was not personally involved in allegedly retaliating against Plaintiff.

Plaintiff's claims against Ms. Pokorny must be dismissed because he cannot establish Ms. Pokorny took any adverse employment action against Plaintiff, or that Ms. Pokorny took any action to support a claim for supervisory liability. "[T]he complaint does not provide any indication that [Ms. Pokorny] was personally involved in the incidents that allegedly violated Plaintiff['s] constitutional rights beyond the conclusory allegations that [s]he 'directed and ordered'" the MTA OIG investigation." *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, No. 97 CV 7138 (SJ), 2000 WL 307377, at *4 (E.D.N.Y. Mar. 26, 2000).

### III.    Plaintiff's Discrimination Claims Must Be Dismissed.

Plaintiff has alleged race and color discrimination under Title VII, § 1981, § 1983, NYSHRL, and NYCHRL.[8]

Title VII, § 1981, § 1983, NYSHRL, and NYCHRL discrimination and retaliation claims are analyzed under the three-part burden shifting scheme the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (stating that Title VII and NYSHRL claims are governed by the *McDonnell Douglas* standard); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (Section 1981 claims); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (NYSHRL and NYCHRL claims). Under *McDonnell Douglas*, the plaintiff bears an initial burden of "proving by the preponderance of the evidence a prima facie case of discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a *prima facie* case of discrimination or retaliation, a presumption of discrimination or retaliation arises and the burden

---

[8] He asserts Title VII discrimination claims only against the NYCTA; and § 1981 and § 1983 discrimination claims only against the Individual Defendants.

shifts to the defendant to offer a legitimate non-discriminatory or non-retaliatory reason for the adverse action. *Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F.Supp.2d 394, 401 (S.D.N.Y. 2010) (citing *Stratton v. Dep't for the Aging*, 132 F.3d 869, 879 (2d Cir. 1997)). If the defendant is able to offer a legitimate basis for the decision, the plaintiff must then establish that the proffered nondiscriminatory reason was pretextual and that the defendant's act was at least partially motivated by discrimination. *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 93–94 (2d Cir. 2001).

However, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). "Rather, because 'a temporary presumption of discriminatory motivation' is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff 'need only give plausible support to a minimal inference of discriminatory motivation.'" *Id.* (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306, 311 (2d Cir. 2015)).

Title VII prohibits discrimination on the basis of an "individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2. To establish a *prima facie* case of discrimination under Title VII, § 1981, § 1983, and the NYSHRL, a plaintiff must show that: "(1) []he is a member of a protected class; (2) []he is qualified for [his] position; (3) []he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Vega*, 801 F.3d at 83 (internal quotation marks and citation omitted).[9] Plaintiff's Complaint must

---

[9] With respect to the NYCHRL standard, "[c]laims brought under the NYCHRL are analyzed using the same framework as Title VII and NYSHRL claims, but must be viewed independently from and more liberally than their federal and state counterparts." *Deveaux v. Skechers USA, Inc.*, No. 19 Civ. 9734 (DLC), 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020) (internal quotation marks and citations omitted). Under the NYCHRL, "the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

provide the "bits and pieces of information" necessary "to support an inference of discrimination, i.e., a mosaic of intentional discrimination[.]" *Id.* at 86 (internal quotation marks and citation omitted). "[A]bsent direct evidence of discrimination," the four-part test "must be plausibly supported by facts alleged in the complaint[.]" *Littlejohn*, 795 F.3d at 311. A plaintiff must adequately allege that his protected characteristic "was a motivating factor in [Defendant's] decision to" terminate him. *Gong v. City Univ. of N.Y.*, 846 F. App'x 6, 8 (2d Cir. 2021). The standard under the NYCHRL requires a plaintiff must plead "that []he is treated 'less well'— because of a discriminatory intent." *Mihalik*, 715 F.3d at 110.

Plaintiff is an African American man and is therefore a member of a protected class under Title VII, § 1981, and the NYSHRL. As to the second prong, the parties do not dispute that Plaintiff was qualified for his position.

Plaintiff must establish that he suffered an adverse employment action. For purposes of a Title VII discrimination case, "[a]n adverse employment action is a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks and emphasis omitted). It must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (citing *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)). An adverse employment action can be a "disruptive" assignment of "an excessive workload" as a result of "discriminatory intent[.]" *Vega*, 801 F.3d at 88. "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (citations and internal quotation marks omitted). However, "[s]hort-

term suspensions pending investigations into wrongdoing generally do not, without more, work an materially adverse change to the terms and conditions of employment." *Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 270 (E.D.N.Y. 2012). "This is because the terms and conditions of employment usually account for disciplinary action in appropriate circumstances." *Id.* (citations and internal quotation marks omitted).

Plaintiff contends he suffered multiple adverse employment actions: being subject to the MTA OIG's investigation, suspension without pay, not being restored to payroll for more than a month past the NYCTA's allegedly agreed-upon date, and denial of overtime work and time off requests. Plaintiff sufficiently pleads that he was subject to adverse employment actions under his discrimination claim.

But Plaintiff fails to meet the final prong showing that the circumstances of his discipline give rise to an inference of discrimination. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Plaintiff offers conflicting accounts as to the scope of individuals subject to disparate treatment as Black and "mostly Black and non-white" co-workers. First, Plaintiff alleges "Black Track Inspectors were targeted by Defendants for investigation and termination while white Track Inspectors responsible for crumbling tracks were let off the hook." *Id.* at ¶ 1. He next claims the "NYCTA, MTA OIG and Pokorny did not investigate the white Track Inspectors

responsible for the No. 7 track in Queens" and "[i]nstead, MTA OIG and Pokorny investigated a 'test group' of seven mostly Black and non-white Track Inspectors in the Bronx on elevated portions of the Nos. 2, 4 and 6 lines that were fed to them by Defendant Nasella[,]" including Plaintiff. FAC at ¶¶ 6-7. For the purposes of this motion, the Court will construe Plaintiff's claim liberally and broadly as alleging that Black and non-white Track Inspectors such as himself were treated worse than fellow white Track Inspectors.

"An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz*, 609 F.3d at 493–94 (internal quotations omitted). *See also Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (same). This comparison requires "a reasonably close resemblance of the facts and circumstances of [a] plaintiff's and comparator's cases." *Graham*, at 40. "[A] plaintiff must allege that []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Daikin*, 756 F.3d at 230 (internal quotation marks omitted). "In the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated." *McDowell v. T-Mobile USA, Inc.*, No. CV-04-2909 DGT, 2007 WL 2816194, at *9 (E.D.N.Y. Sept. 26, 2007), *aff'd*, 307 F. App'x 531 (2d Cir. 2009) (quoting *Conway v. Microsoft Corp.*, 414 F.Supp.2d 450, 465 (S.D.N.Y. 2006)).

Here, Plaintiff's description of similarly situated comparators lack any specificity. Plaintiff broadly asserts that the "MTA OIG and Pokorny did not investigate the white Track Inspectors on the No. 7 tracks." FAC at ¶ 60. Plaintiff is required to plead enough facts to establish that these white co-workers were (1) similar to him and the six other coworkers that were investigated by the MTA OIG and later disciplined by the NYCTA in all material respects,

and (2) subject to different more favorable treatment on the basis of their race or color. Yet Plaintiff admits that one of the seven Track Inspectors were investigated and ultimately disciplined was a white woman. *Id.* at ¶ 82. This inconsistent fact does not alone dispose of Plaintiff's claim. Here, Plaintiff has pleaded that his comparators were white Track Inspectors that worked on the No. 7 tracks. Plaintiff and the proposed comparators shared the same title. While Plaintiff is not required to name each comparator, his descriptions of the comparators are so general that this Court is unable to engage in a meaningful analysis to establish that they are indeed similarly situated to Plaintiff and the six disciplined co-workers. *Rosario v. Town of Mount Kisco*, No. 16-CV-8766, 2018 WL 2209487, at *7 (S.D.N.Y. May 11, 2018) ("generalized description" of comparators was insufficient to establish they were similarly situated to plaintiffs). Plaintiff has not even pleaded that he and the No. 7 white co-workers shared the same supervisor, nor has he provided a detailed account of these alleged comparators allegedly engaged in similar serious misconduct as Plaintiff who did not face discipline or were treated more favorably than Plaintiff. *McDowell*, 2007 WL 2816194, at *9. Plaintiff's lack of specificity as to his comparators dooms his claim.

Finally, Defendants contend that the Complaint fails to allege a causal connection between the adverse actions and a discriminatory motive on race or color. Plaintiff fails to prove that any difference in treatment between himself and his six disciplined co-workers was motivated by race or color discrimination against non-white and Black workers. *Gong*, 846 F. App'x at 8; *Mihalik*, 715 F.3d at 110 (the standard under the NYCHRL requires that Plaintiff was treated "less well"). Under Title VII or § 1983, "a plaintiff claiming disparate treatment under either statute must plausibly allege that []he suffered an 'adverse employment action' taken 'because of'" his protected characteristic. *Naumovski v. Norris*, 934 F.3d 200, 212 (2d Cir.

2019). Under § 1981, Plaintiff must "plausibly allege that 'but for race, [he] would not have suffered the loss of a legally protected right.'" *Moleon v. Alston*, No. 21 Civ. 139 (PAE), 2021 WL 5772439, at *8 (S.D.N.Y. Dec. 3, 2021) (quoting *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020)). "To be considered similarly situated, an individual must have been treated more favorably by the same decisionmaker that dealt with the plaintiff." *Baity v. Kralik*, 51 F. Supp. 3d 414, 447 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

Plaintiff broadly alleges that the same decision-makers treated white Track Inspectors more favorably than non-white and Black Track Inspectors. The only allegations of discriminatory motive Plaintiff has asserted with specificity is regarding Mr. Nasella. In the FAC, Plaintiff asserts he "later learned from his union, [], that Nasella personally 'spoon fed' Brown and six other, mostly non-white Track Inspectors to OIG for investigation." FAC at ¶ 74. He also alleges Mr. Nasella has a history of "discriminatory behavior" and complaints with the MTA's EEOD Department. *Id.* at ¶¶ 75-76. It appears Plaintiff claims Mr. Nasella was discriminatory and he somehow directed the MTA OIG to investigate Mr. Brown and six of his "mostly non-white" co-workers. Plaintiff's allegations against Mr. Nasella are too nebulous. Plaintiff asks this Court to infer that Mr. Nasella instructed the MTA OIG to investigate Plaintiff and his "mostly non-white" co-workers primarily based on Mr. Nasella's alleged reputation for discriminatory conduct. However, a defendant's alleged discriminatory conduct against others with plaintiff's shared protected characteristic is insufficient to state a claim of discrimination against plaintiff on the same basis. *Farooq v. N.Y.C. Health & Hosps. Corp.*, No. 19 Civ. 6294 (JMF), 2020 WL 5018387, at *8-*9 (S.D.N.Y. Aug. 25, 2020). A plaintiff may not rely on a report of pattern and practice of discrimination by a defendant "to provide an inference of

discrimination for an individual disparate treatment claim[.]" *Espinoza v. N.Y.C. Dep't of Transp.*, 304 F. Supp. 3d 374, 389 n.15 (S.D.N.Y. 2018). Plaintiff has not established whether Mr. Nasella had any supervisory power over him, nor that Mr. Nasella directed any disparaging comments or treatment specifically towards Plaintiff. Further, there is no allegation that MTA OIG decided which Track Inspectors to investigate or observe based on Mr. Nasella's purported "spoon feeding."

Even if the Court were to find Plaintiff established discrimination by another decision-maker, that misconduct could not show that another decision-maker was motivated by Mr. Nasella's discriminatory beliefs. *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007).[10] Neither does Plaintiff assert that the MTA OIG who carried out the investigation was even aware of Mr. Brown or his six co-workers' races when it selected which group of workers to investigate, much less that it considered their races. *See Porter v. Half Hollow Hills Centr. Sch. Dist.*, No. 17-CV-5006, 2019 WL 4696384, at *7 (E.D.N.Y. Sept. 26, 2019). Simply put, Plaintiff's "conclusory language that Defendants' alleged actions were motivated by discriminatory intent" without "factual allegations directly connect[ed] Defendants' actions to [Plaintiff's] race" fails to satisfy the *McDougall Douglas* test. *Walker v. Triborough Bridge & Tunnel Auth.*, No. 21-CV-474, 2021 WL 5401483, at *4 (S.D.N.Y. Nov. 18, 2021).

The Court also notes that a neutral arbitrator found that Plaintiff had committed misconduct, and "sentenced Brown to 6-months time served without pay." FAC at ¶ 96. A plaintiff "fail[s] to plead that [] race was a but-for cause of the defendants' conduct" where his "Complaint mentions legitimate, non-discriminatory explanations for defendants' actions." *Avent v. Progressive Casualty Ins. Co.*, No. 19-CV-10907, 2021 WL 168500, at *4 (S.D.N.Y. Jan. 19,

---

[10] For the first time in his opposition papers, ECF Nos. 48-49, Plaintiff asserts that Mr. Nasella's "biased referral" may impute all Defendants for Title VII, § 1983, NYSHRL and NYCHRL claims. This was not raised in the FAC.

2021). A court may take judicial notice of an Arbitration Opinion and Award on a motion to

dismiss, but "it cannot do so to establish the truth of the facts asserted therein." *Beaton*, No. 15

CIV. 8056 (ER), 2016 WL 3387301, at *4 (citing *Henneberger*, 465 F. Supp. 2d at 185). As in

*Beaton*, Plaintiff did not litigate his discrimination or retaliation claims in arbitration. The Court

declines to assume the truth of the neutral arbitrator's fact-findings and preclude Mr. Brown

from alleging contradictory facts or claims, but the Court notes that legitimate, non-

discriminatory explanations may exist for the NYCTA disciplining Plaintiff. Additionally,

Plaintiff and Defendants agree that during at or around the time of the conduct giving rise to

Plaintiff's FAC, there were media reports regarding falling debris on New York City train tracks

and the danger posed to public safety. As such, Plaintiff cannot claim that but-for discriminatory

animus, the MTA OIG would not have investigated Plaintiff or his six "mostly non-white" co-

workers.

  In the alternative, Plaintiff alleges that "[a]t all relevant times, Defendants aided and

abetted the discriminatory acts of each other taken against Plaintiff." FAC at ¶ 40. Plaintiff's

conclusory statement is insufficient to establish Defendants "aided and abetted" each other's

NYSHRL or NYCHRL discrimination and retaliation against him. Plaintiff's Complaint is

devoid of facts detailing how exactly Defendants aided and abetted each other. Fatally, Plaintiff

has not shown an underlying NYSHRL or NYCHRL violation exists, which is required to aid or

abet. *Boonmalert*, 721 Fed. App'x at 34.

  When examining the totality of the circumstances,[11] Plaintiff has not shown that his

termination was motivated by discrimination on the basis of race or color. Plaintiff has not met

---

[11] Plaintiff also asserts that the NYCTA and the MTA "engage in selective enforcement based on race and color"
because "NYCTA and MTA OIG discovered and ignored the fact that Nasella created an MTA-funded electric
charging station using MTA employee labor for a white supervisor's Tesla vehicle in Brooklyn[.]" FAC at ¶ 76. Yet,
Plaintiff's bare allegation cannot create an inference of differential treatment. Plaintiff's assertion is ambiguous as to

his burden to "give plausible support to a minimal inference of discriminatory motivation[,]", *Littlejohn*, 795 F.3d at 306, 311 Thus, Plaintiff has failed to plead facts necessary to support his discrimination claims under Title VII, § 1981, NYSHRL and NYCHRL. As such, the NYSHRL and NYCHRL discrimination claims must be dismissed against all Defendants; the Title VII discrimination claim against the NYCTA must be dismissed; and § 1981 and § 1983 discrimination claims against the Individual Defendants must be dismissed.

### IV.     Plaintiff's Retaliation Claims Must Be Dismissed.

Plaintiff brings retaliation claims under Title VII, § 1981, § 1983, the NYSHRL, and NYCHRL.[12]

#### a.   Title VII, §1981, § 1983, and NYSHRL.

To state a *prima facie* claim for retaliation under Title VII, §1981, § 1983, and the NYSHRL, a plaintiff must demonstrate that: (1) he participated in a protected activity; (2) the defendant was aware of his protected activity; (3) he suffered an "adverse employment action;" and (4) there is a causal connection between the protected activity and the adverse employment action. *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013). A causal connection is established "by showing that the protected activity was followed closely by the discriminatory treatment." *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiff must show that retaliation for the protected activity was a "but-for" cause of his termination, "not simply a 'substantial' or 'motivating' factor in the employer's

---

what wrongdoing Mr. Nasella allegedly committed. Taken as true, Mr. Nasella is not a proper comparator to Plaintiff because he was not similarly situated in all material respects, did not hold the same title as Plaintiff, Plaintiff does not allege that they shared the same supervisor, and Mr. Nasella's alleged misconduct is not comparable or the same as Plaintiff's alleged misconduct of reporting he inspected tracks when the MTA OIG and the arbitrator found Plaintiff did not, to the risk of the public. *See Risco v. McHugh*, 868 F. Supp. 2d 75, 100 (S.D.N.Y. 2012).

[12] Plaintiff brings a Title VII retaliation claim only against the NYCTA; and § 1981 and § 1983 retaliation claims only against the Individual Defendants.

decision." *Zann Kwan*, 737 F.3d at 845 (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 348 (2013)). An employee engaged in a "protected activity" "'need not establish that the conduct he opposed was in fact a violation of Title VII,' but rather, only that he had a 'good faith, reasonable belief' that the underlying employment practice was unlawful." *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (quoting *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). "A mere mention of feeling 'discriminated against' is not enough to put an employer on notice of a protected complaint if 'nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory.'" *Moore v. City of N.Y.*, 745 F. App'x 407, 409 (2d Cir. 2018) (quoting *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)).

In this case, Plaintiff posits that he engaged in two protected activities. First, on April 2, 2021, Plaintiff "submitted a complaint of race discrimination, retaliation and hostile work environment [against the NYCTA] to MTA EEO" which the MTA EEO declined to investigate. FAC at ¶¶ 91-92. Second, Plaintiff made three private social media posts on October 22, 2019, December 6, 2019, and December 15, 2020 criticizing the NYCTA's treatment of employees of color. *Id.* at ¶ 48. Plaintiff alleges that in November 2020, a Maintenance Supervisor I commented that NYCTA "higher-ups" allegedly made "complaints" to the General Superintendent concerning employees' social media posts about working at NYCTA. *Id.* at ¶ 72. Plaintiff also alleges that "[i]n or around January 2021, a union representative advised [him] to stay off social media to prevent NYCTA from targeting [Brown]." *Id.* at ¶ 87. Plaintiff alleges that as a result of his protected activities, Defendants undertook an investigation into Plaintiff's misconduct, subjected him to disciplinary hearings, President Feinberg reassigned Plaintiff and

the six other Track Inspectors to a lower title of Track Worker, and he was denied him overtime work and time off requests.

"The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was *closely followed* in time by the adverse action." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) (internal quotation marks omitted) (emphasis added). The Supreme Court has suggested that "the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). However, the Second Circuit has refused to "drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (internal quotation marks and citation omitted). The Court must then look at the "temporal proximity in the context of particular cases." *Id. Compare Alexander v. Bd. of Educ.*, 107 F. Supp. 3d 323, 329-30 (S.D.N.Y. 2015) (passage of two to three months between a protected activity and an adverse employment action did not indicate a causal connection); *Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (same); *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 299 (S.D.N.Y. 2014) ("courts in this Circuit have often found that a temporal gap of approximately three months between the protected activity and the adverse action, without more, prohibits an inference of causation"); *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) ("close temporal relationship" of four months between plaintiff's complaint and defendant denying her a promotion was "made even closer by the fact that the adverse action occurred at the first actual opportunity to retaliate."); *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (gap of 16 months was "too long to support a retaliation claim based solely on temporal connection.").

Plaintiff vaguely asserts he suffered retaliation after submitting a complaint to the MTA EEO on April 2, 2021, FAC at ¶¶ 91-92, and that this constituted a protected activity. However, Plaintiff does not detail the connection between his EEO complaint and any specific retaliatory actions following his EEO complaint. Plaintiff appears to broadly allege that "in retaliation for Brown's complaints[,]" the NYCTA did not restore Plaintiff to payroll on the purportedly agreed-upon date of April 9, 2021. *Id.* at ¶ 88. Plaintiff was instead restored on May 18, 2021. *Id.* at ¶ 93. Yet Plaintiff does not explain why he believes his protected activity is connected to the NYCTA's purported failure to restore him to payroll. For a start, the Court cannot be certain if the NYCTA even reached an agreement to restore Plaintiff to service on April 9, 2021 – in his FAC, Plaintiff alleges the date "was agreed" to by unidentified individuals at the NYCTA. *Id.* at ¶ 88. However, Plaintiff has alleged that his complaint to the MTA EEO was "closely followed in time" by NYCTA's failure to restore Plaintiff to payroll. *Cifra*, 252 F.3d at 217. Therefore, Plaintiff's retaliation claim related to the failure to restore him to payroll tethered to his EEO complaint must stand.

Next, Plaintiff asserts his social media posts were a protected activity. But Plaintiff's Facebook posts criticizing the MTA were made in a private Facebook group of MTA employees, *id.* at ¶ 49, and Plaintiff does not properly allege that specific Defendants were aware of his social media posts.[13] Plaintiff alleges a supervisor informed him that unidentified NYCTA "higher-ups" "complained" about social media posts regarding working at the NYCTA. *Id.* at ¶ 72. However, Plaintiff does not allege that the supervisor's comment was made because the supervisor or any NYCTA decision-maker involved in the MTA OIG investigation or Plaintiff's

---

[13] For the rest time in his opposition papers, Plaintiff asserts that Mr. Nasella may "have advised [Ms. Pokorny] about Brown's protected activity or that Transit's corporate knowledge of his protected activity can be imputed to the MTA and Pokorny as closely related entities[.]" ECF No. 48 at 17. The Court declines to review Plaintiff's new fact, as it was not asserted in his FAC.

discipline was aware of Plaintiff's specific Facebook posts dated October 22, 2019 and December 6, 2019. Plaintiff fails to establish a link between his Facebook posts and the supervisor's vague comment made a year after said posts. Because "the complaint contains no allegations suggesting that [defendants] were aware of [Plaintiff's] complaints regarding [his] alleged discriminatory treatment[,]" Defendants "thus could not have retaliated against [him] because of those complaints, and [his] retaliation claims fail." *Gurley v. David H. Berg & Assocs.*, No. 20-CV-9998, 2022 WL 309442, at *7 (S.D.N.Y. Feb. 2, 2022).

Even if Plaintiff could establish that Defendants were aware of his Facebook posts, he quickly runs into more temporal proximity obstacles. The MTA OIG's investigation into reports of falling debris on train tracks did not begin until January 2020. FAC at ¶¶ 59-60. Two of Plaintiff's Facebook posts were made prior to the launching of the investigation (October 22, 2019 and December 6, 2019). The gap of three months between the October 2019 post and the investigation also makes causality unlikely, and without more, the December 2019 post is insufficient to create an inference of causality. Because the investigation was well underway for a year prior to Plaintiff's December 15, 2020 Facebook post, Plaintiff cannot establish that the investigation was created in retaliation for his 2020 post.

The remaining retaliatory actions pertain to actions only taken by the NYCTA. Plaintiff alleges that in May 2020 the NYCTA denied his requests for overtime work "due to a surplus of Track Inspectors making overtime work unnecessary," *id.* at ¶ 102; and in July 2020 denied his time off requests due to a shortage of track inspectors, *id.* at ¶ 103. Plaintiff also complains that on December 13, 2020, President Feinberg reassigned Plaintiff and six of his co-workers to a lower title of Track Worker. *Id.* at ¶¶ 27, 80, 82. Plaintiff does not tether these retaliatory actions to any specific protected activity, and the lack of temporal proximity to either protected activity

undercuts his claim. Even so, in denying Plaintiff's overtime and time off requests, the NYCTA provided permissible non-retaliatory reasons for denying the requests.

The Court concludes that Plaintiff's retaliation claim related to the failure to restore him to payroll tethered to his EEO complaint survives dismissal. However, Plaintiff has failed to adequately allege causation for his other retaliation claims under Title VII, §1981, § 1983, and the NYSHRL.

### b. NYCHRL.

The NYCHRL standard is more lenient than the Title VII, § 1981, § 1983, and NYSHRL standard. To sustain a retaliation claim under the NYCHRL, Plaintiff must allege that "[]he took an action opposing her employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. . . . [and] [u]nlike the but-for standard used under Title VII and the NYSHRL, the employer is liable if [he] was motivated *at least in part* by an impermissible motive." *Farmer v. Shake Shack Enters.,* 473 F. Supp. 3d 309, 334 n.8 (S.D.N.Y. 2020) (internal quotation marks and citations omitted). *"*[R]ather than requiring a plaintiff to show an 'adverse employment action,' [the NYCHRL] only requires [Plaintiff] to show that something happened that was 'reasonably likely to deter a person from engaging in protected activity.'" *Rozenfeld v. Dep't of Design & Constr.*, 875 F.Supp.2d 189, 208, 2012 WL 2872157, at *13 (E.D.N.Y. 2012) (citation omitted). Otherwise, the NYCHRL and NYSHRL requirements to establish retaliation are identical. *Id.*

For the reasons stated above, Plaintiff has similarly failed to adequately plead participation in a protected activity under the NYCHRL, that Defendants' conduct was reasonably likely to deter a person from engaging in such an activity, and that he was subject to retaliation.

## II.        Leave to Amend Complaint

Finally, Plaintiff seeks leave to amend his Complaint. Rule 15(a)(2) states "the court should freely give leave when justice so requires." *Id*. The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 178).

The Court is not convinced that "'the flaws in [the Complaint] are incurable.'" *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (quoting *Fort Worth Employers' Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 233 (S.D.N.Y. 2009)). The Court will afford Plaintiff the opportunity to amend his Complaint to attempt to cure its deficiencies.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint, ECF Nos. 41, 43, is hereby **DENIED** with respect to Plaintiff's retaliation claim related to the failure to restore him to payroll tethered to his EEO complaint. The motion to dismiss is **GRANTED** in all other respects. Plaintiff is **GRANTED** leave to amend his Complaint. Plaintiff may file his Amended Complaint on or before April 12, 2024. The Clerk of the Court is respectfully directed to close the open motions at ECF Nos. 41, 43.

**SO ORDERED.**

Dated: March 29, 2024
     New York, New York

                        **ANDREW L. CARTER, JR.**
                        **United States District Judge**