UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TODD BROWN,<br><br>                              **Plaintiff,**<br><br>-against-<br><br>**NEW YORK CITY TRANSIT AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY, SARAH E. FEINBERG, CAROLYN POKORNY, JOSEPH NASELLA, AND JOHN and JANE DOE** (said names being fictitious, the persons intended being those who aided and abetted the unlawful conduct of the named defendants),<br>                              **Defendants.** | 1:22-CV-2949 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Todd Brown ("Plaintiff" or "Brown") brings this action against his former employer the New York City Transit Authority ("NYCTA"), NYCTA President Sarah E. Feinberg, NYCTA Assistant Chief Officer for Track System Maintenance Joseph Nasella, the Metropolitan Transportation Authority ("MTA"), and former Inspector General of the Office of the MTA Inspector General ("MTA OIG") Carolyn Pokorny (each individually a "Defendant" and collectively "Defendants"). Plaintiff alleges he experienced adverse employment actions and disparate treatment, and brings claims under Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Dkt. No. 59, Second Amended Complaint ("SAC"). Plaintiff asserts NYSHRL and NYCHRL discrimination and retaliation claims against all Defendants; Title VII discrimination and retaliation claims against the NYCTA; and § 1981 and § 1983 discrimination and retaliation claims against the Individual Defendants. Plaintiff is an African American male

1

formerly employed by the NYCTA as a Track Worker, and subsequently as a full-rate Track Inspector. *Id.*

On December 18, 2024, Defendants moved to dismiss the SAC. Dkt. Nos. 70–73. For the reasons outlined below, Defendants' motion to dismiss is hereby **DENIED** with respect to Plaintiff's retaliation claim related to the failure to restore him to payroll tethered to his EEO complaint. As to Plaintiff's other claims, the motion to dismiss is **GRANTED**, and those claims are **DISMISSED** with prejudice.

## BACKGROUND

I.     **Statement of Facts**[1]

This case is before the Court on Defendants' motion to dismiss the Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6). The basic facts of this dispute have been set out in detail in this Court's prior opinion. *See Brown v. New York City Transit Authority*, 22-cv-02949 (ALC), 2024 WL 1347283 at *2–5 (Mar. 29, 2024 S.D.N.Y.) (Dkt. No. 56). Therefore, the Court recites here only the additional facts added to the SAC that are relevant to its resolution of the pending motions.

    a.  **Nasella's Supervisory Role**

Plaintiff alleges that Defendant Nasella exercised supervisory authority over the managers responsible for Track Inspectors, including Plaintiff, because Nasella held responsibility for promoting, transferring, and disciplining those supervisors, regardless of the Track Inspectors' work location. SAC ¶ 38. Plaintiff asserts that Nasella was second-in-command of Plaintiff's Track Department. *Id.* ¶ 39. Plaintiff adds allegations that Nasella openly revealed

---

[1] The following facts are taken from Plaintiff's Second Amended Complaint ("SAC") docketed at Dkt. No. 59 and accepted as true for the purposes of this motion.

that he would prevent minority Track Inspectors from logging over-time because he did not want them to make more money than him. *Id.* ¶ 93.

### b. Social Media Activity and Awareness

Plaintiff now alleges that he posted to a private Facebook group of over 13,000 NYCTA employees starting in August of 2019, not October. *Id.* ¶ 52. In August of 2019, Plaintiff allegedly posted criticisms of MTA overtime freezing, despite increased need. *Id.* Plaintiff also adds that on November 9, 2019, he posted in a private Facebook group of over 4,000 NYCTA employees that Train Operators and Track Inspectors kept the City running, a statement later taken out of context and published on the front page of the New York Post. *Id.* ¶ 54. Plaintiff alleges that the individual Defendants were aware of his social media posts because, in December 2019, his Maintenance Supervisor, Jason Auer, told him that General Superintendent Brian Bellow had been informed by "higher-ups" about employees complaining on Facebook. *Id.* ¶ 56. Plaintiff further alleges that as recently as February 2024, Nasella acknowledged Plaintiff's continued Facebook posts, prompting a union representative to warn him that NYCTA managers monitored these groups and could retaliate against employees for their complaints. *Id.* ¶¶ 135–136.

### c. Comparator and Disparate Treatment Allegations

Plaintiff adds that around February 2019, Nassau County Legislator John R. Ferretti, Jr. complained to then-NYCTA President Andy Byford about old debris on elevated train structures creating hazards for traffic and pedestrians. *Id.* ¶ 60. Plaintiff further alleges that white Track Inspectors, though subject to the same standards, were treated more favorably: they were not investigated or disciplined for safety issues on the 1 line despite misconduct, and unlike minority

Inspectors in the Bronx, they were allowed to bypass full use of the inspection app by submitting only photographs. *Id.* ¶¶ 66–68.

### d. OIG Investigation and Interrogation

Regarding the December 28, 2020, OIG Report, Plaintiff adds that the March 18 investigation was flawed because Plaintiff was given permission to leave early due to the COVID-19 pandemic. *Id.* ¶ 77. Plaintiff further alleges that his workload and performance were normal and acceptable on all other days he was surveilled. *Id.* Plaintiff also clarified that his phone usage, which was not directly observed, was not distracting to his work because he was calling contract employees to coordinate the jobs to be completed. *Id.* ¶¶ 78–79. Plaintiff alleges the September 22, 2020 interrogation was a pretext, as investigators dismissed his truthful responses and the OIG Report portrayed him unfairly, while conflicting statements later revealed that inspectors were not randomly chosen but specifically targeted. *Id.* ¶¶ 81, 84. Plaintiff alleges that on October 2020, Auer revealed to him that the OIG "wanted to get rid of [Brown]." *Id.* ¶ 87. Further, Plaintiff alleges that in December of 2020 another supervisor of his, Juan Baez, stated, that "NYCTA and MTA are racist and discipline minorities instead of whites." *Id.* ¶ 88. Plaintiff alleges that his white supervisors were not disciplined according to Pokorny's OIG report that they were "not doing their job." *Id.* ¶¶ 11, 91. Plaintiff alleges the MTA OIG knew the racial makeup of Track Inspectors and intentionally targeted a group of mostly Black and non-white workers in the Bronx, as investigators were familiar with staffing patterns from prior on-site work. *Id.* ¶¶ 94–95.

### e. Selective Enforcement Against Plaintiff

Plaintiff alleges selective enforcement, noting that when Nasella and other white supervisors used MTA funds and employee labor to build a personal charging station for a Tesla,

4

the OIG only ordered its removal without issuing a report or imposing discipline, despite confirming the conduct violated MTA policy, whereas Brown faced harsh investigation and punishment for alleged misconduct. *Id.* ¶¶ 96–101. Plaintiff alleges that only after public scrutiny did Pokorny issue a 2021 report finding Nasella had committed multiple ethics and rules violations, yet she recommended no termination and Transit imposed only a two-day suspension, in stark contrast to the months-long suspension Plaintiff received. *Id.* ¶¶ 116–119.

### f. Arbitration

Finally, Plaintiff adds that the May 2021 arbitration was flawed because the arbitrator wrongly found him guilty, despite contrary evidence and relied on materials not properly introduced at the hearing. *Id.* ¶ 128.

## II.   Procedural History

Plaintiff initiated this action on April 8, 2022, naming the NYCTA, Ms. Feinberg, and Mr. Nasella as Defendants. Dkt. No. 1. On February 27, 2023, Plaintiff first amended his Complaint, adding former Inspector General Pokorny and the MTA as Defendants. Dkt. No. 22 ("FAC"). Plaintiff asserts NYSHRL and NYCHRL discrimination and retaliation claims against all Defendants; Title VII discrimination and retaliation claims against the NYCTA; and § 1981 and § 1983 discrimination and retaliation claims against the Individual Defendants. Defendants moved to dismiss the FAC on May 26, 2023. Dkt. Nos. 41, 43. The Court denied dismissal only as to Plaintiff's payroll-related retaliation claim and granted dismissal of all other claims, with leave to amend. *See Brown v. New York City Transit Authority*, 22-cv-02949 (ALC), 2024 WL 1347283 (Mar. 29, 2024 S.D.N.Y.) (Dkt. No. 56).

On April 19, 2024, Plaintiff filed the Second Amended Complaint ("SAC"). Dkt. No. 59. On December 18, 2024, Defendants moved to dismiss the SAC. Dkt. Nos. 71, 73. On February 3,

5

2025, Plaintiff filed his opposition. Dkt. Nos. 78, 79. On February 24, 2025, Defendants filed their reply. Dkt. Nos. 82, 83. This matter is fully briefed; this Opinion and Order resolves the pending motions.

## STANDARD OF REVIEW

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

# DISCUSSION

## I. Plaintiff's Claims Against Inspector General Pokorny

Plaintiff asserts NYSHRL and NYCHRL discrimination and retaliation claims, as well as § 1981 and § 1983 discrimination and retaliation claims against the then-MTA OIG Inspector General Pokorny. The Court has asked Plaintiff to establish that Ms. Pokorny was "personally involved" in the alleged misconduct for the claims to survive. *See* Dkt. No. 56 at 14; *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (holding that a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015). As the Court previously explained, the MTA OIG is housed "in" the MTA and its role is limited by statute to investigation and recommendation, discipline rests with NYCTA. *See* Dkt. No. 56 at 13; N.Y. Pub. Auth. Law § 1279(1), (6); *Anemone v. Metro. Transp. Auth.*, 410 F. Supp. 2d 255, 270–71 (S.D.N.Y. 2006). And because the MTA and NYCTA are distinct entities, they are not responsible for each other's torts. *See, e.g.*, *Mayayev v. MTA Bus*, 74 A.D.3d 910, 911, 904 N.Y.S.2d 84, 86 (2d Dep't 2010).

### a. Discrimination Claims

The SAC adds that, following public scrutiny, Pokorny issued a 2021 report concluding that Defendant Nasella violated multiple ethics provisions but recommending only a minor sanction, after which the NYCTA imposed a two-day suspension. SAC ¶¶ 116–119. Plaintiff contrasts that with the lengthy suspension he received. *Id.* However, this allegation does not cure the prior deficiency: Pokorny's statutory role was limited to investigating and making recommendations. She had no disciplinary authority over Plaintiff, and the SAC acknowledges that all employment decisions rested with the NYCTA. *See* Dkt. No. 56 at 13–16; N.Y. Pub.

Auth. Law § 1279(6). Consistent with the Court's prior ruling, Plaintiff's alleged adverse actions (investigation consequences, suspension, payroll decisions) were imposed by his employer, NYCTA, not by Pokorny or the OIG, so non-binding OIG recommendations cannot ground personal liability for discipline imposed by a separate entity.

Nor does Plaintiff plausibly allege that Pokorny selected him for investigation because of his race. The SAC asserts in conclusory terms that minority inspectors were investigated while white inspectors were not, but it does not allege that Pokorny knew the race of the inspectors she directed OIG staff to investigate. Although Plaintiff adds that the MTA OIG generally knew the racial makeup of Track Inspectors and intentionally targeted a group of mostly Black and non-white workers in the Bronx, citing investigators' familiarity with staffing patterns from prior site visits, these allegations do not connect that knowledge to Pokorny personally or plausibly support an inference that she acted with discriminatory intent. SAC ¶¶ 94–95. Each defendant must be liable only for their own misconduct and discriminatory purpose; allegations about the OIG's general knowledge do not plausibly plead that Pokorny herself acted with race-based intent. *See Tangreti*, 983 F.3d at 618; *Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) (". . . [T]he requisite discriminatory intent must be held by the state official in his individual capacity. Thus, liability for an Equal Protection Clause violation under § 1983 requires personal involvement by a defendant, who must act with discriminatory purpose."); *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (". . . [A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983."). And Section 1981 further requires but-for causation. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,* 589 U.S. 327, 140 S. Ct. 1009, 1015, 206 L. Ed. 2d 356 (2020).

To the extent Plaintiff suggests that Pokorny's investigative report itself constitutes a discriminatory "adverse action," courts decline to impose liability on an investigator whose non-binding recommendation is followed by an independent employment decision of a separate entity. *See, e.g., Anemone*, 410 F. Supp. 2d at 270.

### b. Retaliation Claims

Plaintiff again fails to sufficiently allege that Pokorny knew of his protected activity. Plaintiff alleges that the individual Defendants were aware of his Facebook posts, citing a supervisor's 2019 remark that "higher-ups" had seen them. SAC ¶ 56. He further alleges that in February 2024, Defendant Nasella told a union chairman he knew of Plaintiff's posts, after which the chairman warned Plaintiff that NYCTA managers monitored the groups and could retaliate against employees for their comments. SAC ¶¶ 135–36. In the first opinion, the Court found no allegations that Pokorny or the OIG were even aware of Plaintiff's posts; the SAC does not cure that defect.

For the same reasons discussed above, the timing of the OIG investigation relative to the posts does not plausibly suggest that Pokorny, in particular, acted "because of" protected activity.

### c. Supervisory Liability

Plaintiff's reliance on broad theories of supervisory liability is foreclosed by *Tangreti*. The SAC offers only conclusory assertions that Pokorny directed and ordered the OIG investigation, without factual enhancement. That is insufficient. *See Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, No. 97-cv-7138 (SJ), 2000 WL 307377, at *4 (E.D.N.Y. Mar. 26, 2000).

Plaintiff's claims against Ms. Pokorny must be dismissed because he cannot establish Ms. Pokorny took any adverse employment action against Plaintiff, or that Ms. Pokorny took any action to support a claim for supervisory liability. The Court again concludes that "the complaint

does not provide any indication that [Ms. Pokorny] was personally involved in the incidents that allegedly violated Plaintiff['s] constitutional rights beyond the conclusory allegations that [s]he 'directed and ordered' the MTA OIG investigation." *Patrolmen's Benevolent Ass'n of City of N.Y. v. City of N.Y.*, 2000 WL 307377, at *4 (E.D.N.Y. Mar. 26, 2000); *Brown*, 2024 WL 1347283 at *8.

## II.     Plaintiff's Discrimination Claims

Plaintiff has alleged race and color discrimination under Title VII, § 1981, § 1983, the NYSHRL, and the NYCHRL. Discrimination claims under these statutes are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010). At the pleading stage, however, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)).

The Court has already held that Plaintiff adequately alleged adverse employment actions, including suspension without pay and delayed payroll reinstatement. The issue now is whether Plaintiff's new allegations plausibly support the final element: that the circumstances of his discipline give rise to an inference of discrimination. *See Littlejohn*, 795 F.3d at 312. The Court previously found Plaintiff's comparator allegations too vague. Dkt. No. 56 at 19–23. As explained below, Plaintiff's claim fails because his allegations remain too vague for this Court to conduct a meaningful analysis as to whether Plaintiff's alleged comparators are actually similarly situated to him.

10

### a. Comparator Allegations

In the SAC, Plaintiff points to two white Track Inspectors on the No. 1 line who allegedly failed to secure bolts on elevated tracks, yet were not investigated or disciplined, even though one had previously been caught working another job during NYCTA hours. SAC ¶ 67. Plaintiff also alleges that minority inspectors in the Bronx were pressured to use every feature of a new inspection phone application, while white inspectors in Queens were permitted to submit only photographs. SAC ¶ 68. Finally, Plaintiff alleges that two white supervisors used NYCTA property to charge a Tesla vehicle but received no discipline, while Plaintiff was suspended. SAC ¶¶ 96–101, 116–119.

As set forth in the Court's March 29, 2024 Opinion (Dkt. No. 56), successful comparator allegations must include allegations that the "plaintiff . . .was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Daikin*, 756 F.3d at 230 (internal quotation marks omitted) (Dkt. No. 56 at 20). Further, "[i]n the Second Circuit, whether or not co-employees report to the same supervisor is an important factor in determining whether two employees are subject to the same workplace standards for purposes of finding them similarly situated." *McDowell v. T-Mobile USA, Inc.*, No. 04-cv-2909 DGT, 2007 WL 2816194, at *9 (E.D.N.Y. Sept. 26, 2007), *aff'd*, 307 F. App'x 531 (2d Cir. 2009) (quoting *Conway v. Microsoft Corp.*, 414 F.Supp.2d 450, 465 (S.D.N.Y. 2006)).

Despite these additional factual allegations, the SAC still fails to explain how the comparators were similarly situated to Plaintiff.[2] As previously explained in the Court's Opinion, Plaintiff's allegations are so general that the Court remains unable to engage in a meaningful

---

[2] The SAC states, in a conclusory fashion, that "The white Track Inspectors and their supervisors performed the same tasks as Plaintiff, work for the same department and were subject to the same tasks and standards of work and discipline, though they worked in different areas." However, the SAC is bereft of any allegations as to what, for example, the "tasks" or "standards" are.

analysis concerning whether the comparators are actually similarly situated to Plaintiff. Again, Plaintiff's lack of specificity as to his comparators dooms his claim. *Rosario v. Town of Mount Kisco*, No. 16-cv-8766, 2018 WL 2209487, at *7 (S.D.N.Y. May 11, 2018) ("generalized description" of comparators was insufficient to establish they were similarly situated to plaintiffs).

### b. Allegations Against Nasella

Plaintiff also relies on allegations that Defendant Nasella personally acted with discriminatory animus. The SAC asserts that Nasella "openly said that he stops overtime for minority Track Inspectors because he does not want them earning more money than him." SAC ¶ 93. Plaintiff further alleges that Nasella "spoon fed" the names of mostly minority Track Inspectors in the Bronx to the MTA OIG as a "test group" for investigation. *Id.* ¶¶ 70, 90. These additional allegations do not cure the deficiencies outlined in the Court's Opinion. Therefore, the allegations against Nasella fail for the same reasons outlined in the Court's Opinion, including that they do not establish that Nasella specifically directed any disparaging comments or treatment specifically towards Plaintiff, or that the MTA OIG heeded Nasella's spoon feeding when deciding who to investigate or observe.

### c. Aiding and Abetting

In the alternative, Plaintiff alleges that "[a]t all relevant times, Defendants aided and abetted the discriminatory acts of each other taken against Plaintiff." SAC at ¶ 43. For a plaintiff to prevail on an aiding and abetting theory under either the NYSHRL or NYCHRL, there must be an underlying violation of the statute. *Boonmalert v. City of N.Y.*, 721 Fed. App'x 29, 34 (2d Cir. 2018). Under both the NYSHRL and the NYCHRL, individuals may be held liable if they actually participated in the conduct giving rise to the discrimination claim. *Feingold v. New York*,

366 F.3d 138, 157 (2d Cir. 2004); N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). To survive a motion to dismiss, Plaintiff must allege that an individual defendant actually took part in, encouraged, or condoned the discriminatory conduct.

In its earlier Opinion, the Court concluded that, with respect to Plaintiff's aiding and abetting theory, the complaint was "devoid of facts detailing how exactly Defendants aided and abetted each other.," and failed to show that "an underlying NYSHRL or NYCHRL violation exists." Dkt. No. 56 at 24. Plaintiff added no new factual allegations in support of this theory in his SAC. Therefore, it must be dismissed for the same reasons as those outlined in the Court's earlier Opinion.

### III.   Plaintiff's Retaliation Claims

In its prior Opinion, the Court held that Plaintiff successfully alleged his engagement in two protected activities: the filing of his April 2, 2021, EEO complaint and his social media posts criticizing Defendants. The Court sustained only one retaliation theory: NYCTA's failure to timely restore Plaintiff to payroll following his April 2, 2021 EEO complaint, and dismissed the other due to Plaintiff's failure to allege that Defendants were aware of his social media posts, that the posts were the cause of any retaliatory actions against him, and because there were temporal proximity issues.[3] Dkt. No. 56 at 25–30.  As explained below, Plaintiff's additional allegations (*see supra* pg. 3) do not alter the Court's holding with respect to Plaintiff's social media posts.

---

[3] Specifically, the Court stated that "The MTA OIG's investigation into reports of falling debris on train tracks did not begin until January 2020. FAC at ¶¶ 59-60. Two of Plaintiff's Facebook posts were made prior to the launching of the investigation (October 22, 2019 and December 6, 2019). The gap of three months between the October 2019 post and the investigation also makes causality unlikely, and without more, the December 2019 post is insufficient to create an inference of causality."

### a. Title VII, § 1981, § 1983, and NYSHRL

The additional allegations Plaintiff supplied in support of his retaliation claims help establish Defendants' potential knowledge of his Facebook posts, but they fail to resolve the temporal proximity issue outlined in the Court's Opinion. SAC ¶¶ 52, 54, 56, 135–136. The addition of the allegation that on November 9, 2019, the New York Post ran an article misrepresenting one of Plaintiff's social media posts is not sufficient to close the three-month temporal gap (along with Plaintiff's two other social media posts), but it does support the inference that Defendants had knowledge of the posts because of the publicity Plaintiff's words received.[4] SAC ¶ 54; *Alexander v. Bd. of Educ.*, 107 F. Supp. 3d 323, 329-30 (S.D.N.Y. 2015) (passage of two to three months between a protected activity and an adverse employment action did not indicate a causal connection). Because the SAC still fails to address the temporal gap, Plaintiff's retaliation claim with respect to the social media posts still fails.

### b. NYCHRL

As previously explained, the standard for a retaliation claim under the NYCHRL is more lenient than the one used when assessing claims under Title VII, § 1981, § 1983, and the NYSHRL. *See* Dkt. No. 56 at 30. As set forth in the Court's Opinion, "to sustain a retaliation claim under the NYCHRL, Plaintiff must allege that he took an action opposing his "employer's discrimination . . . and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. . . . and unlike the but-for standard used under Title VII and the NYSHRL, the employer is liable if [they were] motivated at least in part by an impermissible motive." *Farmer v. Shake Shack Enters.*, 473 F. Supp. 3d 309, 334 n.8

---

[4] Plaintiff's allegation that Auer told him "higher-ups" were aware of Facebook complaints in December 2019 does not move the needle because, unlike Plaintiff's allegation concerning the publication of his social media post in the New York Post, the Auer allegation does not demonstrate that the alleged higher-ups were aware of Plaintiff's posts specifically.

(S.D.N.Y. 2020) (internal quotation marks and citations omitted). Rather than requiring a plaintiff to show an 'adverse employment action,' the NYCHRL only requires Plaintiff to show that something happened that was 'reasonably likely to deter a person from engaging in protected activity. *Rozenfeld v. Dep't of Design & Constr*., 875 F.Supp.2d 189, 208, 2012 WL 2872157, at *13 (E.D.N.Y. 2012) (citation omitted)." Dkt. No. 56 at 30 (brackets removed).

Even with the additional allegations, Plaintiff's retaliation claim with respect to the social media posts still fails to clear this threshold. Plaintiff continues to fail to adequately plead participation in a protected activity under the NYCHRL, that Defendants' conduct was reasonably likely to deter a person from engaging in such an activity, and that he was subject to retaliation. Plaintiff's NYCHRL claim with respect to the social media posts is thus DISMISSED.

### IV.    Leave to Further Amend the Second Amended Complaint is DENIED

In general, courts should freely give leave for a plaintiff to amend their complaint when justice so requires. Rule 15(a)(2). Ultimately, the decision on whether to grant leave to amend a complaint is "within the sound discretion of the court." *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman v. Davis*, 371 U.S. 178 (1962)). Further, a court is not required to grant leave to amend a complaint where amendment would be futile; in such cases, dismissal of a complaint with prejudice is appropriate. *See Mohamed v. Nolan Law Grp.*, 574 F. App'x 45, 46 (2d Cir. 2014) (affirming the district Court's dismissal of a complaint with prejudice because any attempt to amend would be futile because the claims were time barred).

Here, this Court has twice afforded Plaintiff the opportunity to amend the Complaint. Dkt. Nos. 18, 56. Further, in its prior Opinion, the Court outlined in great detail the additional

allegations Plaintiff needed to include in his Complaint to make it past the motion to dismiss stage. *See generally,* Dkt. No. 56. Plaintiff has twice failed to allege facts that can support the dismissed claims. Further attempts to do so would be futile. Accordingly, the claims are **DISMISSED** with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' Motion **DENIED** with respect to Plaintiff's retaliation claim related to the Defendants' failure to restore him to payroll tethered to his EEO complaint. The Motion **GRANTED** in all other respects. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. The remaining Defendants are hereby **ORDERED** to answer the SAC no later than **October 20, 2025**. The Clerk of Court is respectfully directed to terminate the pending motions at Dkt. Nos. 70 and 72.

**SO ORDERED.**

Dated: **September 30, 2025**
New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**